Celso LOPEZ LOPEZ, Plaintiff,

v.

M. ARAN; J. Figueroa; I. Moreno; individually and as Agents of the United States Immigration and Naturalization Service; Allen C. Nelson, in his official capacity as the Commissioner of the United States Immigration and Naturalization Service; James H. Walker, in his official capacity as Director of the Naturalization Service Office for the District of Puerto Rico, Defendants.

Civ. No. 83–2388 (JP).

United States District Court,
D. Puerto Rico.

Nov. 14, 1988.

Celso Lopez Lopez, San Sebastian, P.R., and Charles Hey–Maestre, de Derechos Civiles, Río Piedras, P.R., for plaintiff.

Eduardo Toro Font, Asst. U.S. Atty., Hato Rey, P.R., for defendants.

## OPINION AND ORDER

PIERAS, District Judge.

The Court of Appeals remanded this case for, among other things, resolution of the factual issue of the defendants' reasonable suspicion that the plaintiff was an illegal alien at his detention on October 2, 1982. 844 F.2d 898 (1st Cir.1988). The Court also noted that this factual issue "is bound up with the question of the agents' qualified immunity under the doctrine of *Harlow v. Fitzgerald* [457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1972) ]...." The parties have had the opportunity to develop the factual record through presentation of testimony before a jury. At the close of the plaintiff's case, the defendants moved for a directed verdict on the basis of qualified immunity. The Court denied that motion, the defendants presented their case, and then they renewed their motion for directed verdict. For reasons that follow, the Court GRANTS the motion and directs a verdict in favor of the defendants on the basis of qualified immunity.

■ The doctrine of qualified immunity applies to government officials performing discretionary functions, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *Anderson v. Creighton,* —— U.S. ——, ——, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523, 530 (1987). To protect government officials from the fear of personal monetary liability and harassing litigation, the Supreme Court extends qualified immunity to "all but the plainly incompetent or those who knowingly violated the law." *Anderson,* —— U.S. at ——, 107 S.Ct. at 3038, 97 L.Ed.2d at 530, *quoting Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). At issue here is defendants Arán and Figueroa's knowing violation of the law, not their competence. The Court shall not inquire into the defendants' subjective intent; rather we must determine whether a reasonable immigration inspector could have believed López' detention to be lawful, in light of clearly established law and the information the inspectors possessed. *Anderson,* —— U.S. at ——, 107 S.Ct. at 3040, 97 L.Ed.2d at 532.

The Court of Appeals has made our analysis simpler by articulating the legal standards that the defendants are presumed to know. That is, it was clearly established at the time of López' detention that their detention was permissible only if the inspectors had an objectively reasonable suspicion that López was an illegal alien.

Figueroa and Aran have both testified that López' conduct aroused their suspicions immediately upon his entrance into the inspection area. As López quickly approached the immigration inspection area, he was immediately attended to by Figueroa and Aran because the plane at the nearby gate had already been boarded, and there were no people in line or in the boarding area. López then grinned at Aran. Figueroa and Aran considered this to be a sarcastic grin and thought it to be somewhat odd behavior. They began to raise their suspicion when López failed to answer Aran's question, spoken in Spanish, "What country are you a citizen of?" They became more suspicious when López proceeded to the security checkpoint without speaking. Aran apprised López' demeanor as nervous and her own attitude as suspicious.

As López walked to the security checkpoint, Aran stated that López didn't answer her question, and Figueroa followed López. As López placed his shoulder bag on the conveyor belt, Figueroa asked a second time about López' citizenship. When López didn't answer, Figueroa told the security guard that López had not finished the immigration inspection. As Figueroa expected, the security guard removed López' bag from the conveyor. This had the effect of communicating to López that he was not free to proceed to his plane.

■ If at this point López was detained, as he argues, the Court concludes that both Figueroa and Aran had sufficient reasonable suspicion. López' failure to answer, his demeanor, and his goading smile could reasonably have raised the inspectors' suspicions well above the level they have of the typical traveler. There were at this point no indications that López was, in fact, a citizen. He had not yet spoken, and he had not produced the typewritten card that might have indicated his identity by reputation. The only evidence Figueroa possessed at that time legitimately raised his suspicions. His implied request to the security guard to slow López' progress was therefore an objectively reasonable response to the circumstances.

Once López' bag was removed from the conveyor, Figueroa asked him a third time about his citizenship. At this point, López produced the index card that bore the typewritten message: "Do you suspect that I am an alien?" Figueroa did not respond to this question, but continued his attempt to complete his inspection. He testified that he became increasingly suspicious of López because López was nervous, pale, had trembling lips, and sported unkempt hair. As Figueroa was considering the index card, Arán arrived to assist. Upon seeing the card, she remarked that this reminded

her of Ivette Moreno's case. Immigration Inspector Ivette Moreno had informally told Aran the tale of a particular traveler who had showed goading messages on index cards and refused to speak. The traveler in Moreno's case was Celso López, who was of course found not to be an illegal alien by Moreno when he spoke and she detected a Puerto Rican accent. Aran does not recall whether she knew on October 2, 1986, that the suspicious traveler in Moreno's case was actually a citizen. She testified, however, that she did not believe that López was a citizen. Regardless of her suspicions, Aran did not stay long at the security check point but returned quickly to the immigration checkpoint to conduct inspections of other travelers.

While Aran was at the immigration checkpoint and Figueroa continued his efforts to gain López' cooperation, López testified that he spoke, telling the security guard that what he was doing was illegal and asking who was in charge. The three actors characterize López' manner of speaking quite differently: López contends that he remained calm and spoke clearly; Aran, who was at the immigration checkpoint five or six feet away, heard shouting and screaming; Figueroa, standing next to López, contends that López exploded, was yelling, and that his speech was almost incoherent, such that Figueroa could not ascertain López' accent.

There is no evidence that López waited for or received a response to his verbal question. Both Aran and Figueroa testified that he immediately picked up his shoulder bag from the table near the checkpoint and left the area toward the terminal. López then walked to the Eastern Airlines desk in the terminal.

At this point, López' detention, as envisioned by the Circuit Court, was completed. Although López later returned to the checkpoint area with an Eastern supervisor, he had by that time missed his flight to Baltimore. When López arrived at the checkpoint, his plane had already been boarded, and ten to fifteen minutes remained until departure. The encounter with Figueroa and Aran comprised from

one to five minutes. There is no testimony of the amount of time López spent walking to the Eastern desk, asking for and obtaining the services of a supervisor, and returning to the checkpoint, but it is clear that there was no hope for López to catch his plane once he left the checkpoint.

To this point, the conduct of Aran was clearly reasonable. Her only participation was to ask López the initial question, to remark that López had failed to answer, and to state that the index cards reminded her of Ivette Moreno's case. This conduct would be reasonable even with a very low level of suspicion. Aran's suspicion was not low, however, but it was sufficient to justify blocking López' passage. Aran knew that López had refused to speak, that his demeanor was unusual, and that he produced an index card rather than speaking. Aran was an experienced inspector and had encountered illegal aliens previously who had presented typed cards to avoid speaking. She did not know that López was a citizen, and it is not certain that she even suspected that this was the traveler from Ivette Moreno's case. Therefore, in light of the circumstances, the Court concludes that Aran had sufficient suspicion of López to justify her actions which resulted in the blocking of López' passage.

In Figueroa's case, the Court reaches the same conclusion. Figueroa's actions directly led to the blockage of López' passage, so Figueroa must be considered responsible for the detention. This is especially true in light of Figueroa's testimony that he would have taken other measures to block López if López had continued toward the plane. When Figueroa spoke to the security guard who removed López' bag, Figueroa had ample reason for suspicion. López had grinned at Arán and ignored her question, he had an unusual demeanor, and he ignored Figueroa's question. There was nothing in López' conduct to reduce their suspicion. Later, López produced his index card and spoke to or yelled at the security guard. Although Figueroa at this point heard López' voice, Figueroa did not recognize the accent as Puerto Rican. He retained a high level of suspicion in light of his experience with illegal aliens who had

attempted to evade questioning through harassment of the inspectors. Even though his suspicion was high, Figueroa took no further steps to detain López. Rather, López took his bags and left. The Court therefore finds that the steps Figueroa took to block López' passage were those of a reasonable immigration inspector, and they were supported by a reasonable suspicion that López was an illegal alien.

The Court therefore finds that both defendants, Maria del Mar Aran and Juan Figueroa, are protected by the doctrine of qualified immunity. The plaintiff's claim is therefore DISMISSED.

Judgment shall be entered accordingly.

IT IS SO ORDERED.