**Celso LOPEZ LOPEZ,
Plaintiff, Appellant,**

v.

**M. ARAN, et al., Defendants, Appellees.**

**No. 89–1182.**

United States Court of Appeals,
First Circuit.

Heard Sept. 7, 1989.

Decided Feb. 12, 1990.

Charles S. Hey Maestre, Rio Piedras, P.R., with whom Instituto Puertorriqueno de Derechos Civiles and Celso E. Lopez Lopez, San Sebastian, P.R., were on brief for plaintiff, appellant.

Eduardo E. Toro Font, Asst. U.S. Atty., with whom Daniel F. Lopez Romo, U.S. Atty., and Vivian Reyes Lopez, Dist. Counsel, I.N.S., Hato Rey, P.R., were on brief, for defendants, appellees.

Before BOWNES, Circuit Judge,* ALDRICH and GIBSON,** Senior Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

The United States Immigration and Naturalization Service (INS) established at the Puerto Rico Isla Verde, now Luis Munoz Marin International Airport, an informal inspection procedure designed to screen illegal aliens seeking to enter the continental United States. As Puerto Rico is part of the United States, it is not an immigration threshold, and the only excuse for the INS procedure is that illegal aliens find Puerto Rico an especially facile location to obtain freedom of movement to the mainland by concealment of status. Some Puerto Ricans, of which plaintiff was assertedly one, were offended by a checkpoint being there at all, and by the further fact that they were personally subject to scrutiny. After an episode in 1979, plaintiff set out to confront the system, and did so on three occasions, following which he brought the present action. He sought an injunction against the operation altogether, or, alternatively, a declaratory judgment limiting the procedure, and an award of damages for the personal impositions on him.

Plaintiff's complaint, as amended to make clear its several purposes, is in three counts. The first is for an injunction, or declaratory relief, with respect to the INS procedure, and notes the difference between the relief sought against defendant INS officers in their official and their personal capacities. The second is for damages to be recovered from defendants INS officers personally, "for constitutional torts." The third sought damages from other individual defendants, airline agents, in their personal capacity, "for Puerto Rican torts." This count was dropped before trial. Count one is no longer before us, because it was disposed of, partly in plaintiff's favor, in our earlier decision, *Lopez Lopez v. Aran*, 844 F.2d 898 (1st Cir.1988),

but which remanded for trial on count two. We must, however, go back to the beginning, recapitulating some of the facts there recited.

Plaintiff, a native Puerto Rican, residing in Puerto Rico, is a lawyer and businessman who has occasion to fly, as much as several times a year, to the mainland United States. Although the reason for checking on citizenship was known to him, and the total procedure, except in unusual circumstances not here involved, consisted of asking, and receiving an affirmative answer to whether he was a United States citizen, plaintiff found this burden an unconstitutional invasion on his private rights that caused him to be "insulted and humiliated." In count two he seeks compensatory damages against INS inspection officers of $21,030, and punitive damages "in excess of $10,000."

The first of the airport events occurred in 1979. On this occasion the INS officer took plaintiff's boarding pass from him, and, when he declined to respond as to his citizenship, indicated that he could not board. Though complaining, plaintiff finally conceded and answered.

In a 1980 episode plaintiff told the officer that the Supreme Court had determined that she had no right to ask anything, in the absence of valid reasons to believe he was not a citizen. He testified that she did not agree, but finally let him by without his telling his citizenship as she concluded that he was a Puerto Rican from his manner of speaking Spanish.

Though he did not affirmatively so state, from his testimony that he flew several times a year it is to be presumed that between that event and the next complained of, plaintiff passed through the checkpoint without incident. On July 16, 1982, in order, he said, that his voice would not give him away, plaintiff prepared, and came to the airport with, a typed card reading as follows,

Do you suspect that I am an alien? (Please write down your answer.)[1]

---

* Since oral argument Judge Bownes has become a Senior Circuit Judge.
** Of the Eighth Circuit, sitting by designation.

1. This is copied from Exhibit A of the complaint. In the body of the complaint, and throughout his testimony, plaintiff used the

The INS officer, former defendant Moreno, took away his ticket, and asked the customary question. For answer plaintiff simply produced the card. Subsequently, however, he talked, and, finally, answered the question.

The fourth occasion was on October 2, 1982. On this date the INS officers were present defendants, Aran and Figueroa. They did not take away his ticket, but after he had walked past them they followed and asked if he was a United States citizen. His answer was to present the card, together with a smile that one of the defendants interpreted as sarcastic. Plaintiff testified it meant, "Well, are you still doing this?" or "You never learn," which if not sarcastic, surely was not sociable. There was no suggestion that plaintiff had met these defendants before, or given them an opportunity to "learn." Defendants instructed the airline agent not to process plaintiff's hand luggage until they completed their procedure, viz., received an affirmation of United States citizenship. Plaintiff left and returned to the airline desk for assistance, and, receiving none, spoke to defendants "firmly," he put it; "shouting," they put it, so that they were unable to recognize his accent. "You have no right to ask me anything unless you have valid reasons to believe I'm an alien. Do you believe I'm an alien?" On the resulting impasse, plaintiff retrieved his carry-on bags and left the airport. The next day he departed on the same flight, without incident.

Plaintiff sued for all except the 1979 event, but found the statute of limitations had run on all except the last. Following a bench trial the court denied equitable relief, and refused to consider damages, holding the INS defendants had qualified immunity. On appeal we held that the checkpoint was valid even though it was not at a national border, and that it is freely permissible to inquire of boarding passengers if they are United States citizens. We added, "[O]nce it is ascertained that the individual has heard and understood but is willfully refusing to answer, there may well be sufficient justification to refuse passage pending further inspection." 844 F.2d at 909, n. 15. We noted, however, that interference beyond this required a reasonable suspicion, "some hint," and that the mere failure to respond to the citizenship inquiry did not furnish such. 844 F.2d at 908. We remanded for an appropriate declaration of proper procedure, and an injunction, and a trial, to include the remaining two INS defendants' defense of qualified immunity. A jury trial ensued, but at the close of the evidence the court ruled that this defense had been established as matter of law. 699 F.Supp. 365. Plaintiff appeals.

In light of the fact that it was already known that it was not sufficient simply to rely on a refusal to answer, defendants' other claimed reasons for suspicion may have been insufficient, *Brown v. Texas*, 443 U.S. 47, 53, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979), and we have a possible question as to the correctness of the district court's ruling. We consider first, however, plaintiff's substantive claim. According to the complaint's second cause of action, defendants' denying plaintiff access to the plane after his refusal to state his citizenship, constituted,

> coercive, abusive and threatening actions, omissions and speech, which constituted illegal detention of plaintiff, an unwarranted invasion of his privacy and unlawful taking of his liberty without due process of law all in violation of the Fourth and Fifth Amendments of the United States Constitution....

> . . . . .

> [s]eriously infringed upon and violated Plaintiff's rights to travel freely within the United States as guaranteed by the Fourth and Fifth Amendments of the U.S. Constitution....

> . . . . .

> [and] constituted false imprisonment and intentional infliction of emotional distress....

There was, of course, no false imprisonment. On his own evidence, plaintiff moved about, and was always free to leave the airport. Indeed, he complains to us

---

word "believe," rather than "suspect," and failed

to refer to other than the first sentence.

that if defendants believed he was an illegal alien, they should have demonstrated it by seeking to arrest him. As to "abusive and threatening actions ... and speech ... and intentional infliction of emotional distress," on cross-examination plaintiff was asked,

Q. Isn't it true that they treated you in a very calm and respectful manner?

A. Yes. They didn't let me board my plane, but they were very courteous in the process of doing that, yes.

Q. They were polite with you?

A. Yes, definitely, yes.

In his opening plaintiff stated that he never intended to confront the INS officers, and used his "best efforts [to avoid being] harassed." It is true that defendants made the first move, but plaintiff knew from past experience that on some occasion this was bound to happen. When it did, what better confrontation than a critical—if not sarcastic—smile, a challenging card, and, ultimately, an oral statement calling for belief, thus substantially overstating plaintiff's rights? There is a wide difference between reasonable suspicion and belief. Plaintiff's conduct was far more obtrusive than mere silence.

We do not question that plaintiff had the right to occasion defendants' denial of his boarding the plane unless he answered their inquiry. *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Thus, apart from defendants' qualified immunity, the substantive issue is that of damages. As a native Puerto Rican, in spite of the number of illegal aliens the record shows were apprehended, conceivably plaintiff might think it a reflection that a special checkpoint was established in Puerto Rico. More directly, he might be personally affronted by being selected as one whose United States citizenship was open to question. Prior to the damage trial, however, we had determined that the public good was paramount in both of these respects. *See* 844 F.2d at 902, 904. This did not modify plaintiff's desire to collect damages therefor from the pocketbooks of these low-level government employees. Before the jury plaintiff expostulated,

[T]he INS doesn't have any authority, from my point of view, to ask these questions unless they believe I am an alien, and I do have a constitutional right not to be intruded in my privacy or while I'm exercising my right to travel freely from one point in the United States, which is San Juan, to another point in the United States, be that New York or Washington.... And that is something the INS would not dare to do in the United States, let's say from New York to Washington.

Thus, after we had expressly ruled that the INS had lawfully established the San Juan checkpoint, and that officers such as defendants had a right to inquire of his citizenship regardless of any citizenship question in their minds, plaintiff seeks full damages for what he had been told he had no right to object. It is to be borne in mind that not only is plaintiff a lawyer, participating in the brief in this case, but he professed special familiarity with the immigration laws.

There remains the injury from having to state that he was a United States citizen, and the consequences he charges from his silence, the loss of his flight for 24 hours. We divide this in two parts. Assuming it can be reasonably effected, there is a duty in all cases to mitigate damages. *Allied International, Inc. v. International Longshoremen's Ass'n*, 814 F.2d 32 (1st Cir.), *cert. denied*, 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 41 (1987). The fact that accomplishing this may impose a burden is not an excuse, *Goldstein v. Kelleher*, 728 F.2d 32, 38 (1st Cir.), *cert. denied*, 469 U.S. 852, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984); what should have been done, but was not, is regarded as not a consequence of the original tort. At first blush it might seem ironical that plaintiff is asked to speak in order to avoid losing his flight, the very act that he had a right not to do, but this does not change the principle. The tort would not be waived. *See National Steel Corp. v. Great Lakes Towing Co.*, 574 F.2d 339, 343 (6th Cir.1978) ("The plaintiff has a duty to take reasonable steps to mitigate damages, but this is a concept of *avoidance,*

not repair.") (emphasis original). The question is to weigh the balance.

We can readily understand the injury of having to concede that one is not a citizen, but, apart from the asserted affront of having been asked in the first place, for which there can be no recovery, how substantial is the injury in answering that one is a citizen? We can imagine substantial injury only to a person so completely self-concerned that he is willing to impose on eight private citizens the sacrifice of three days of their personal time—not to mention the delay occasioned to other private parties awaiting trial, and the burden on the courts—to "vindicate his rights." We may question the need to take judicial time to consider financial relief for such a person. Plaintiff already had his ruling forbidding that it happen again. The other alternative, persuasively supported by plaintiff's original conduct that he would call non-harassing, and his displayed persistence in seeking damages for activity that we had ruled lawful, is that he deliberately engaged in creating a cause of action for damages beyond having to answer, by setting, as we said in our prior opinion, a trap. This calls into play the principle of volenti non fit injuria. Passing beyond those necessarily involved in asserting his civil rights, a plaintiff cannot be permitted to induce damages and then recover for them. *Clark v. Bird*, 354 F.2d 977 (1st Cir.), *cert. denied*, 384 U.S. 906, 86 S.Ct. 1341, 16 L.Ed.2d 359 (1966).

 It is true that in our prior opinion we remanded the case for trial both as to defendants' claim of qualified privilege and damages. This, however, is not to be taken as the law of the case. "That doctrine 'does not rigidly bind a court to its former decisions, but is only addressed to its good sense.' " *Higgins v. California Prune & Apricot Grower, Inc.*, 3 F.2d 896, 898 (2d Cir.1924) (L. Hand, J.) (quoted in *Doe v. Anrig*, 728 F.2d 30, 31 (1st Cir.1984)). We were not then aware, either from the district court's opinion, or the briefs of the

parties, of the second, further provocative line in the card. Nor did we particularly address ourselves to damages, or envision that plaintiff was going to seek damages at the second trial by telling the jury that defendants acted wrongfully, and in disparagement of Puerto Rico, in asking him the question. To have standing on the equity side to attack the regulations, all that plaintiff needed was to be stopped. We conclude that so far as money damages are concerned, plaintiff sought to incur them. We therefore find he is not entitled to recover them. There is no need to decide the issue of qualified immunity, or to remand for that purpose. If plaintiff, in the absence of such, would be entitled to recover modest damages for having to state, on this one occasion, that he was a United States citizen, he has already abused his rights in that connection by asking for much more.

*Affirmed.*