**Ana Maria RAMOS AYALA, et al., Plaintiffs,**

v.

**Miguel DIAZ MARTINEZ, his wife and their conjugal partnership, et al., Defendants.**

**Civ. No. 87–1303 GG.**

United States District Court, D. Puerto Rico.

Dec. 16, 1988.

José Ramón Franco Rivera, Old San Juan, P.R., for plaintiffs.

Héctor Rivera Cruz, Secretary of Justice, José R. García Pérez, Federal Litigation Div., Dept. of Justice, San Juan, P.R., for defendants.

## OPINION AND ORDER

GIERBOLINI, District Judge.

This is an action brought under 42 U.S.C. § 1983 and Art. 1802 of the Puerto Rico Civil Code, tit. 31 L.P.R.A. 5141, by the mother, grandmother and sisters of Charlie Rondón Ramos (hereinafter the decedent). Mr. Ramos died of a bullet wound after attempting to elude police in a high speed chase on September 20, 1986. Defendants have filed a motion for summary judgment. For the reasons stated below, the motion is granted and judgment is ordered entered in favor of defendants.

Defendants offer the sworn statement of Police Lieutenant Heriberto Pérez Figueroa who relates the following chain of events which are uncontested. Lieutenant Pérez was at his sister's house in Bayamón at approximately 6:30 p.m. on September 20, 1986 when a man, whom he later identified as the decedent, burst into the kitchen armed with a pistol and announced "this is a holdup". When Pérez did not comply immediately with the demand, decedent fired a shot, which missed Pérez. Pérez

drew his service revolver and fired twice at decedent but also missed. Decedent ran just outside the house where he turned and fired again, missing Pérez. He then ran to a waiting car Pérez identified as a white Toyota Supra.

Two men were waiting outside the house and they also ran away. One of the men was detained by a neighbor and arrested by Lieutenant Pérez. The other man returned to the scene a few minutes later and was arrested. Soon thereafter, the decedent and another man returned in the Toyota Supra and stopped in front of the house, apparently to rescue their accomplices. One of the men under arrest gestured to them to leave and the Toyota sped off.

A short time later four police cars arrived, two marked and two unmarked. Pérez got in one of the cars and spotted the white Toyota heading towards Highway 2. The police cars pursued the suspect's vehicle in a high speed chase. The suspect's vehicle ultimately collided with three other cars. The decedent immediately ran from the scene of the accident. Lieutenant Pérez did not pursue the decedent, but heard shooting and later identified the wounded man as the one who had attempted to rob him at his sister's house.

Defendants also offer the sworn statement of defendant police officer Miguel Díaz Martínez who relates the overlapping chain of events: At about 6:30 p.m. on said date, as he began his shift, he was alerted to the aforementioned holdup and drove to the scene in an unmarked police car accompanied by two other police agents. Residents told them that the suspects had just left in a white Celica Supra heading towards San Juan on Highway 2. They proceeded in that direction and spotted the suspect vehicle with two passengers. They pursued the suspect vehicle with the siren on in a high speed chase. The suspect vehicle weaved in and out of both oncoming and ongoing vehicles until colliding with two oncoming cars. Both passengers got out of the car and ran from the scene. The driver, later identified as the decedent, held a pistol. The police fired three to four warning shots and ordered the men to stop.

Officer Díaz pursued the armed suspect onto a side street. The decedent fired at him and officer Díaz returned fire with a single shot from a position of cover. Although Díaz did not see his shot strike the decedent, he was found wounded lying on the ground. He was immediately taken to a local hospital but died while being transferred to another hospital.

Plaintiffs offer the sworn statements of two persons whose cars were struck by the automobile driven by decedent. Both persons witnessed decedent run away from the scene of the accident. One witness mentions that the persons ignored orders to halt, given by police who had identified themselves. Neither witness mentions that decedent was armed. Plaintiffs contend that this omission creates a genuine issue of material fact as to whether decedent was armed and therefore, whether it was reasonable for police to use deadly force to prevent his escape.

*Applicable Law*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A motion for summary judgment will be granted only "if the pleadings, depositions [and] answers to interrogatories, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *General Office Products v. A.M. Capen's Sons, Inc.,* 780 F.2d 1077 (1st Cir.1986). The mere existence of an alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.

Material facts are those which might affect the outcome of a suit under the gov-

erning law, while genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson, supra,* 477 U.S. at 252, 106 S.Ct. at 2512. The judge's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *Id.* at 250, 106 S.Ct. at 2511. There is no genuine issue for trial unless there is sufficient evidence favorable to the nonmovant for a jury to return a verdict for that party. *Id.* at 252, 106 S.Ct. at 2512; *see also First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968); *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Therefore, summary judgment may be granted if the nonmovant's evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) (per curiam), or is not significantly probative. *Cities Service, supra,* 391 U.S. at 290, 88 S.Ct. at 1593.

In the motion for summary judgment, defendants contend that the shooting of decedent was reasonable as a matter of law and that there is no genuine issue of material fact to be resolved at trial. Defendants rely on *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). In *Garner,* the Supreme Court held that the apprehension of a suspect by the use of deadly force is a "seizure" subject to the reasonableness requirement of the fourth amendment. *Id.* at 7, 105 S.Ct. at 1699. The Court noted that under fourth amendment analysis, the reasonableness of a seizure depends on whether the totality of the circumstances justify a particular sort of search or seizure. *Id.* at 8–9, 105 S.Ct. at 1699–1700. The Court struck down a Tennessee statute which permitted the use of deadly force to prevent the escape of all felony suspects, under any circumstances. The Court found that the state's interest in law enforcement did not outweigh an unarmed, nondangerous suspect's interest in life. *Id.* at 11, 105 S.Ct. at 1701.

Nevertheless, the Court enumerated circumstances in which the use of deadly force is permitted:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

*Id.* at 11–12, 105 S.Ct. at 1701.

■ We find defendants' use of deadly force to be reasonable as a matter of law under the *Garner* standard. Police may use deadly force if there is probable cause to believe that the suspect has committed a crime involving the infliction or threatened infliction of serious physical harm. *Id.* Probable cause exists "where the facts and circumstances within [an officer's] knowledge and of which [that officer] had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949).

Clearly, the police had probable cause to believe that decedent had committed a crime involving the infliction of serious physical harm. Defendant Díaz had received a radio report informing him of a robbery and shooting in a residence of Jardines de Caparra. Robbery is an inherently dangerous and violent crime. *See Ryder v. City of Topeka,* 814 F.2d 1412, 1220 (10th Cir.1987). The radio report was confirmed by neighbors who told defendant Díaz that the men had just left in a white Celica Supra. A vehicle matching that description attempted to elude police, leading them on a high speed chase. The suspects fled after being told to stop by police who

had identified themselves. A stronger case of probable cause is difficult to imagine.

In their reply to defendant's motion for summary judgment, plaintiffs suggest that *Garner* requires the court to examine the totality of the circumstances to determine whether the officer's use of deadly force was reasonable under the fourth amendment. We find that *Garner* does not necessarily require the trial court to undertake a balancing test to determine the reasonableness of police use of deadly force. Rather, *Garner* provides a legal standard under which police use of deadly force to prevent escape is considered reasonable: When the officer has probable cause to believe that the suspect has committed a crime involving infliction or threatened infliction of serious physical harm or the suspect threatens the officer with a weapon and a warning has been given, if feasible. *Garner, supra,* 471 U.S. at 11–12, 105 S.Ct. at 1701–1702. We find no genuine issue of material fact as to whether defendant Díaz had probable cause to believe decedent had committed a crime involving the threatened infliction of serious physical harm. Since the police action was reasonable under the *Garner* standard, no further inquiry is necessary.

Once a defendant moving for summary judgment has supported his motion adequately, plaintiffs then have a burden to show that summary judgment is improper, coming forward with special facts showing a genuine dispute. *Matsushita Electric Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Id.* However, in the instant case, plaintiffs have not come forward with facts from which adverse inferences can be drawn. Instead, plaintiffs offer omissions—the failure of witnesses to mention that decedent was armed—and ask us to draw the inference that decedent was unarmed. The issue is whether the proof supports the inference. *See* Childress, A New Era for Summary Judgments: Recent Shifts at the Supreme Court, 116 F.R.D. 183, 186 (1987). The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita, supra,* 475 U.S. at 586, 106 S.Ct. at 1356. In view of the uncontested facts regarding the entire chain of events leading to the unfortunate shooting, we find plaintiffs' evidence insufficiently probative to raise a genuine issue of material fact for trial.

Even if we draw the inference that decedent was unarmed, summary judgment would be appropriate. Under *Garner,* police may use deadly force to prevent the escape of a suspect whom they have probable cause to believe has committed a crime involving threatened infliction of serious physical harm and a warning has been given, if feasible. *Garner, supra,* 471 U.S. at 11–12, 105 S.Ct at 1701–02. As our discussion above indicates, the police had probable cause to believe decedent had committed a violent crime. Moreover, decedent was warned by police at the scene. According to statements of witnesses provided by plaintiffs, decedent ignored police orders to halt, which were given after the police had identified themselves. The same witnesses also state that decedent ignored several police warning shots fired into the air. In view of the foregoing we find that the use of deadly force to prevent escape was justified under *Garner* and therefore, no genuine issue of material fact remains to be resolved at trial.

Wherefore, defendants' motion for summary judgment is hereby GRANTED. The federal cause of action against defendant Miguel Díaz Martínez is hereby dismissed.

*Wrongful Death Claim*

■ Defendants also seek summary judgment on plaintiff's pendent Commonwealth law unlawful death claim. Plaintiffs allege that defendants negligently, intentionally, or recklessly brought about the death of decedent pursuant to Article 1802 of the Puerto Rico Civil Code. 31 L.P.R.A. § 5141. Defendants cursorily contend that they are entitled to summary judgment based upon the officers' right of self defense. *See* Article 22 of the Puerto Rico Civil Code, tit. 33 L.P.R.A. § 3095. Plain-

tiffs have not specifically replied to defendants' motion for summary judgment of the pendent claim.

In *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed. 2d 218 (1966), the Supreme Court gave clear guidance for federal court treatment of pendent claims. *Gibbs* establishes that, as a rule, when the court dismisses the federal claim before trial, it should also dismiss any pendent state claim without prejudice, so that the plaintiff may pursue that claim in the appropriate state tribunal. *Gibbs, supra,* 383 U.S. at 726–27, 86 S.Ct. at 1139. There are two exceptions to this rule. The first covers the situation where the statute of limitations has run on the pendent claim, precluding the filing of a separate lawsuit. *O'Brien v. Continental Illinois Nat. Bank & Trust,* 593 F.2d 54, 65 (7th Cir.1979). Under the law of Puerto Rico, the statute of limitations is interrupted by the commencement of an action in court, even if that action is later dismissed without prejudice. Tit. 31 L.P.R.A. § 5303; *see also Moa v. Commonwealth,* 100 D.P.R. 623 (1982). The interruption extends from the date of filing to the date when the judgment of dismissal is entered without prejudice. *Fresh O-Baking Co. v. Molinos de P.R.,* 103 D.P.R. 509 (1975). Therefore, this exception does not apply in the instant case because plaintiffs are free to file their claim in state court, although they must not delay.

Second, dismissal of the pendent claim is unnecessary when substantial judicial resources have been committed so that sending the case to another court will cause a substantial duplication of effort. *See Moses v. Kenosha County,* 826 F.2d 708, 711 (7th Cir.1987). In deciding whether to exercise our power to retain jurisdiction we look to considerations of judicial economy, convenience and, of course, fairness to the litigants. *Pueblo Int'l v. De Cardona,* 725 F.2d 823, 826 (1st Cir.1984). We find that the parties have expended little energy and resources on the pendent claim, having barely discussed it in their briefs. Moreover, this court should avoid needless decisions of state law, both as a matter of comity and to promote justice between the parties, by providing them with a surer-footed reading of the applicable law.

In view of the foregoing, defendants' motion for summary judgment of plaintiffs' federal claim under 42 U.S.C. § 1983 is hereby GRANTED. The federal cause of action against defendant Miguel Díaz Martínez is hereby dismissed. Plaintiffs' claim for wrongful death is hereby dismissed without prejudice.

SO ORDERED.