**Edelmiro SALAS GARCIA,
et al., Plaintiffs,**

v.

**Julio CESAR PEREZ, et al., Defendants.**

**Luis A. RIVERA SIACA,
et al., Plaintiffs,**

v.

**Julio CESAR PEREZ, et al., Defendants.**

**Civ. Nos. 81–0881 (RLA), 81–0943 (RLA).**

United States District Court,
D. Puerto Rico.

Oct. 31, 1991.

Harvey B. Nachman, Santurce, P.R., for plaintiffs.

Department of Justice, Federal Litigation Div., Francisco Ponsa Feliú, San Juan, P.R., Calvin F. David, Miami, Fla., Charles A. Chavier Stevenson, San Juan, P.R., for defendants.

## TABLE OF CONTENTS

OPINION AND ORDER............................................... 140
 THE MOTIONS ................................................ 141
 THE SUMMARY JUDGMENT STANDARD ........................... 141
 THE FACTS .................................................. 143
 ISSUES ..................................................... 145
 DISCUSSION ................................................ 145
 A. THE FOURTH AMENDMENT CLAIMS ......................... 145
 1. 42 U.S.C. Section 1983 ............................... 145
 2. The Constitutional Standard ......................... 146
 3. Lack of Section 1983 Claim .......................... 146
 a. Treasury Defendants ........................... 146
 b. EAL and Security Associates ................... 147
 c. Police Defendants ............................. 147
 d. Conclusion ................................... 148
 4. Qualified Immunity .................................. 148
 5. Reasonableness of Defendants' Actions ............... 148
 a. Seizure of the Boxes .......................... 149
 b. Salas's Arrest ................................ 150
 c. The Push Against Rivera and Ortiz ............. 151
 6. Conclusion .......................................... 151
 B. STATE CLAIMS ......................................... 151
 C. CLAIMS PURSUANT TO FAA REGULATIONS AND FEDERAL TARIFFS .................................................. 152
 CONCLUSION ................................................ 152

## OPINION AND ORDER

ACOSTA, District Judge.

These are two civil rights actions that were consolidated by Order of the late Judge Hernán Pesquera of this district.[1] Other than a few differences in the claims made and the damages alleged, the complaints, which have been amended, are essentially the same: they are based on the same incident and involve the same defendants. In general, plaintiffs allege that the defendants violated their legal rights by seizing and searching part of their baggage at the San Juan International Airport and when two of the plaintiffs were "seized" and another arrested for disturbing the peace while refusing to have his baggage inspected by Puerto Rico Treasury officials.

Plaintiffs Edelmiro Salas García (Salas) and his wife Astrid Medina de Salas and Luis A. Rivera Siaca (Rivera) and his wife Eneri Ortiz Jiménez de Rivera (Ortiz) filed the present suits for damages pursuant to 42 U.S.C. § 1983 (federal constitutional tort); 32 L.P.R.A. §§ 3141–3149 (state libel and slander action); 31 L.P.R.A. § 5141 (state general tort actions, including one for conversion); and unspecified Federal Aviation Administration (FAA) regulations and federal tariffs. Plaintiffs also seek punitive damages for their federal claims.

There are approximately twenty-one defendants in this case. They can be categorized for now into four general groups: (1) Five members of the Puerto Rico Treasury Department in their personal and/or official capacities;[2] (2) Three members of the Puerto Rico Police Department in both their personal and official capacities;[3] (3) Eastern Airlines, Inc. (EAL) and seven of its employees;[4] and (4) Security Associates, which was the entity in charge of security at the airport at the time, and four of its employees.[5]

Jurisdiction is premised upon 28 U.S.C. § 1343(a)(3) and (4) (federal question); pendent jurisdiction as to the claims under Puerto Rico law; and 28 U.S.C. § 1332 (diversity jurisdiction as to EAL).[6]

The claims against defendants can be synthesized as follows. The Treasury officials allegedly "promulgated or has kept in force [and enforced regulations] permitting unlawful searches and seizures." .... Civ. No. 81–0881 at 2 para. 7 Civ. 81–0943 at 2 para. 7. The Treasury agents, in turn, are alleged to have ordered or performed duties which they knew would violate plaintiffs' constitutional rights. The police officers are said to have performed unlawful searches and seizures, false imprisonment as well as assault upon certain plaintiffs. The employees of EAL are cited for the above acts for which they did not have the "power to arrest or order anyone else to." EAL itself is accused of violating some unnamed federal tariffs. The employees of Security Associates are treated in the complaints in the same fashion as those of EAL. And, finally, Security Associates itself has allegedly some form of vicarious liability for the conduct of its employees.

Before the Court are a number of dispositive motions filed by the defendants which have been under advisement for an inordinate amount of time.[7]

---

1. See docket No. 21 (Civil No. 81–0881) and docket No. 22 (Civil No. 81–0943).

2. Julio César Pérez, former Secretary of the Puerto Rico Treasury Department; Manuel Martir Santiago, the then Director of the Excise Division of the Treasury Department; Félix Gregorio Lebrón, Charles Vera, and William Rios, agents of the Treasury Department.

3. Police officers Efraín Vega, Rubén Rivera, and José L. Sánchez.

4. José Delgado, Janin Burzio, Rodolfo Segarra, Frank Figarella, Radamés Tirado, Tomás Rodríguez, and Angel Colón.

5. Hilda de Jesús, Juan Reyes, José L. Torres, and Casimiro Reyes.

6. The plaintiffs, in their motions, seem to have abandoned their claims based on diversity jurisdiction. This is not surprising since there is no complete diversity of citizenship among the parties as required by federal law. Consequently, we will not consider this issue any further. Therefore, the only remaining grounds for jurisdiction are federal question (U.S. Constitution) and pendent jurisdiction.

7. The Court regrets the embarrassing delay in ruling on these motions, some of which are several years old. There are two main reasons for this prolongation. First, the cases at bar have been handled by at least four successive judges (Pesquera, Cerezo, Pieras, and the undersigned) and two magistrates (Simonpietri and

## THE MOTIONS

The crucial issues before us are raised essentially in two dispositive motions pending before the Court. The first one was filed by EAL on behalf of itself and its employees.[8] EAL presents two arguments in support of its motion for summary judgment. It first argues that the plaintiffs have failed to state any actionable claims against it or any of its employees and further that there is no causal connection between plaintiffs' alleged damages and the conduct of these defendants during the relevant period. Plaintiffs respond by pointing to various portions of certain depositions and asserting that these, together with the allegations of the complaint, sufficiently overcome defendants arguments insofar as they, at the very least, raise triable issues of fact.

The second motion was filed by the Puerto Rico Government on behalf of all the state government officials and/or employees, i.e., Treasury officials and agents as well as police officers [9] which the plaintiffs duly opposed.[10] The Government, in support of its own motion for summary judgment, argues that none of its agents acted wrongfully; that at most plaintiffs suffered a simple assault which is not an actionable constitutional claim; and that in any case the Government agents and/or employees are all entitled to qualified immunity. The plaintiffs' response to these arguments is more of the same, to wit, that the record shows the sufficiency of their claims.

Additionally, although neither Security Associates nor its employees submitted their own dispositive motion, the arguments made in the motions filed by the other defendants are easily attributed to them since the claims against the security personnel are virtually identical to those made against all defendants generally. Also, there are really no distinguishing facts peculiar to these defendants and the issues of law are clear and have the same import on all. Similarly, plaintiffs' oppositions require no supplementation as to these defendants since the arguments are applicable to all concerned and the record is complete as to deposition testimony regarding the alleged involvement of the security personnel in the incident at the airport.

## THE SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure requires that a motion for summary judgment be granted whenever "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact...." To defeat a summary judgment motion the non-moving party must demon-

Arenas). Apparently, because of some confusion as to which judge had the case, the file was misplaced and then lost soon after the undersigned's last Order in this case, sometime around August, 1985. Consequently, the case languished for a couple of years unnoticed and no attempt was made by any of the parties to shake the case from its lethargy. (Apparently, the last filing by any party was made in September of 1985.) Once this omission was belatedly discovered, an extensive search of the Court files had to be made to complete the record but this was not accomplished until approximately eighteen months ago. By that time this Court was well into the throes of the mammoth multi-district litigation regarding the Dupont Hotel fire which required its full attention and resources. This is the second reason that caused the case at bar to be again unfortunately shelved.

Although the delay in ruling on the following motions may initially seem to make the issues and/or facts somewhat stale, such is not the case. The present record in this litigation is quite extensive and contains lengthy deposition transcripts as well as several briefs on the various issues before us.

8. *See* docket No. 73 in Civil No. 81–0881 (filed on April 3, 1984).

9. *See* docket No. 79 in Civil No. 81–0881 (filed on September 12, 1984).

10. *See* docket No. 76 (filed on March 18, 1984).

The consolidated case, Civil No. 81–0943, contains motions that essentially correspond to those referenced above, albeit there are differences between the two cases regarding certain facts and claims simply because they involve different plaintiffs. The arguments in favor and against summary judgment are almost identical. Therefore, for ease of reading we will refer to just one set of motions and will make the necessary distinctions as we discuss the particular claims of specific plaintiffs.

strate the existence of a genuine issue of material fact pertaining to those factual issues in which it would bear the burden of proof at trial. *See Lujan v. National Wildlife Federation,* —— U.S. ——, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990); *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also Connell v. Bank of Boston,* 924 F.2d 1169, 1171–72 (1st Cir.1991); *Slattery v. Bower,* 924 F.2d 6, 8 (1st Cir.1991); *Kauffman v. Puerto Rico Telephone Company,* 841 F.2d 1169, 1172 (1st Cir.1988) ("summary judgment is proper when, after adequate time for discovery, the party against whom judgment is sought fails to show sufficient basis for the establishment of an essential element of its case") (citations omitted).

The Supreme Court in various consecutive decisions [11] has spearheaded a current renaissance in summary judgment procedures which in effect has served to increase the burden on a challenged plaintiff to prove its case before trial.[12] At bottom, the moving party must simply demonstrate an absence of evidence to support the non-movant's case, prompting the non-movant to establish its case with sufficient evidence or otherwise lose its cause. *Lujan,* 110 S.Ct. at 3186. The type of evidence that the non-movant must produce need not be in a form that would be admissible at trial, *see Celotex, supra,* but the rule itself has always cautioned that it is fatal for a party opposing summary judgment to simply rest upon its pleadings and not establish specific facts that show that there is an issue for trial through Rule 56(c) type evidence. *United States v. One Parcel of Real Property ...,* 900 F.2d 470, 473–74 (1st Cir.1990). The Court must view the evidence in the light most favorable to the non-moving party and, without making credibility determinations or weighing the evidence, must determine whether no rea-

sonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986) ("in a run-of-the-mill civil case ... [the court must ask] whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented"); *Taylor v. Gallagher,* 737 F.2d 134, 137 (1st Cir.1984).

The key standard that plaintiff must meet in this case is to establish an issue of fact which is both genuine and material. *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975) *cert. denied* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). For the materiality of the dispute a court must look to the substantive law of the case since "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. On the other hand, the dispute is genuine if it could under normal circumstances reach the deliberation of a jury favorable to plaintiff. In this sense we must view the evidence "through the prism of the substantive evidentiary burden." *Id.* at 254, 106 S.Ct. at 2513. Thus when a court has looked at all the material presented and finds that some genuine factual issue remains in the case whose resolution could in some manner affect its outcome, then the court must deny the motion.

After viewing the record in the light most favorable to plaintiffs in these consolidated cases we find that they will be unable to discharge their burden at trial of establishing the existence of elements essential to sustain their cause of action under federal law. In essence, plaintiffs have rested merely upon "unsupported allegations and speculations" that their rights under federal law were violated by defendants. *Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 110 (1st Cir.1988).

**11.** *See Lujan, supra; Celotex, supra; Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (products liability, libel, and antitrust claims).

**12.** We are mindful that "[n]otwithstanding that recent case law has invited greater use of Rule 56, the test remains a fairly rigorous one." *Greenberg v. Puerto Rico Maritime Shipping Authority,* 835 F.2d 932, 934 (1st Cir.1987); *see also, Olivera v. Nestlé Puerto Rico, Inc.,* 922 F.2d 43 (1st Cir.1990).

The testimony of plaintiffs themselves shows that there was no illegal arrest, search or seizure, that most of the defendants had little or nothing to do with the incident at the airport and those that were involved acted reasonably.

Plaintiffs have failed to show the existence of a triable issue of fact. Certainly they dispute various "details and nuances" but the factual background of this suit is largely uncontroverted. Their disagreement with defendants is largely "conjectural and problematic" rather than substantive. Thus, they have failed to present this Court with genuine or material facts that could overcome summary disposition of the legal issues. *See Mack v. Great Atlantic and Pacific Tea Co., Inc.,* 871 F.2d 179, 181 (1st Cir.1989); *see also, Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11. Moreover, we find that no further exploration of the facts (beyond the record) is really necessary, *see Johnson v. Educational Testing Service,* 754 F.2d 20, 25 (1st Cir.) *cert. denied* 472 U.S. 1029, 105 S.Ct. 3504, 87 L.Ed.2d 635 (1985) (citing *Packish v. McMurtrie,* 697 F.2d 23, 27 (1st Cir.1983)), since the record as a whole makes it apparent that under no set of conceivable facts could plaintiffs, given the circumstances of this case and the relevant law, prove that they enjoyed federal constitutional or statutory protection against the actions taken by the defendants. *See also, Briggs v. Kerrigan,* 431 F.2d 967, 968 (1st Cir.1970) ("[T]he purpose of summary judgment is not to explore all the factual ramifications of the case, but to determine whether such exploration is necessary"). In this sense, summary judgment must be granted as there can be but one reasonable conclusion and that is that plaintiffs will not prevail at trial. *Anderson,* 477 U.S. at 247, 106 S.Ct. at 2509.

## THE FACTS

On February 22, 1981, Mr. and Mrs. Salas and Mr. and Mrs. Rivera, all traveling companions, arrived at the Muñoz Marín Airport (the former Puerto Rico International Airport) aboard an EAL flight. They were returning home from a four-day shopping tour in Miami, Florida. It was approximately 10:00 p.m. While Rivera went to the airport police station to retrieve a gun and some car keys he had previously deposited there, the rest of the party proceeded to the EAL baggage claim area to retrieve their luggage. Salas held the claim tickets or stubs for the baggage of the entire traveling party and he immediately proceeded to remove the items, which consisted of suitcases and an extensive amount of large, unmarked boxes, from the conveyor belt.[13] After removing approximately six items, Salas was approached by a state Treasury official who identified himself and asked Salas what was in the boxes. Salas did not answer. The agent, Gregorio Lebrón, then advised Salas that the boxes, but not the suitcases, had to be inspected for possible taxable items.[14] Salas immediately and adamantly refused to permit the inspection. He also told the agent that he, Salas, was an attorney and

---

13. Plaintiffs collectively, i.e., between the two couples, had more than seventeen (17) pieces of luggage, of which only six (6) were suitcases; the rest were conspicuously unmarked, sizeable boxes.

14. The Excise Act of Puerto Rico, 13 L.P.R.A. § 4001 et seq. § 4010 levied a tax on articles introduced into Puerto Rico. (Even the cardboard boxes themselves are taxable.) It was repealed on October 8, 1987. Act No. 5, Oct. 8, 1987. According to the deposition of defendant Martir, Director of the Excise Tax Department, the normal inspection procedure is as follows. Treasury agents at the airport try to intercept easily visible taxable merchandise. They then ask the owner if he is carrying taxable items and, if so, to produce an invoice or make an appropriate declaration as required by law or to permit an inspection. If the putative taxpayer refuses, then the items are seized, an inventory search is made, a tax bill is prepared, with attendant penalties, and upon payment the goods are returned. Importantly, suitcases are never seized or inspected because they are presumed to contain only nontaxable personal effects, and out of a concern for the privacy of the individual. Moreover, Martir testified that in the 27 years he has been on the job, he had never had to arrest or forcibly seize any baggage even though he is authorized under the statute to do so. He added that Salas was the first case they had of absolute non-cooperation. None of this testimony has been contested by plaintiffs.

that he was aware that pursuant to a United States Supreme Court decision, searches of baggage at the airport were unconstitutional.[15] Meanwhile, other passengers were allowing the agents to inspect their baggage and some of them were observed by plaintiffs as paying taxes in order to prevent the seizure of items that had not been properly declared.

The Treasury agent departed from the baggage area and shortly returned with two armed Commonwealth police officers, one of them with a shotgun. The police assessed the situation, asked Salas to permit the inspection of the boxes. He refused. They then asked him to accompany them to go before a judge. He said "no" and repeated his *Torres* soliloquy. By this time Salas had removed all the baggage from the conveyor belt. The police officers informed Salas he was under arrest and then left to obtain a warrant. After all the other passengers had claimed their baggage and left, Salas was detained in the locked[16] baggage claim area while the police went to obtain the warrant. One police officer stood guard outside the door. The other plaintiffs were removed from this area without their luggage. Eventually all the baggage except for five boxes were returned to plaintiffs unopened. Rivera and Ortiz claim they were pushed by one or several unspecified police officers when they refused to exit the baggage claim area without all of their baggage.

Presently the police returned with an arrest warrant. It was approximately 1:00 a.m. They took Salas before a judge at the San Juan Judicial Center. They also presented to the judge a random selection of approximately five boxes, qua baggage, that they had seized from plaintiffs. According to Salas himself, the boxes were opened for the first time in the courtroom and upon "the insinuations of the judge."[17] The disclosure proved the Treasury agents correct: the boxes contained several taxable items including television sets[18] which plaintiffs had not declared to the authorities as required by law. *See* 13 L.P.R.A. § 4070 (a person who introduces taxable items to Puerto Rico must present the proper invoices and documentation to the Secretary of the Treasury),[19] and for which substantial taxes were due.

Salas and his wife were very experienced travelers who made monthly trips to the mainland, many of these were in the nature of shopping junkets. Salas was aware of the Excise Tax law. At page 90 of his deposition he states:

> I was aware that when you bring merchandise to Puerto Rico and they [treasury agents] pick it up and say [taxable] like that means that you pay [taxes] but I wasn't aware that the government ... had issued orders to have people searched at the airport under the guise of looking for [taxes] I was aware that the Supreme Court case (sic) and I felt

**15.** Plaintiff was referring to *Torres v. Puerto Rico*, 442 U.S. 465, 99 S.Ct. 2425, 61 L.Ed.2d 1 (1979) (statute that allowed police to search luggage of any person arriving at an airport or pier in Puerto Rico, for the express purpose of intercepting drugs, weapons, etc., without any requirement of probable cause, violated Fourth Amendment).

**16.** Although Salas insists that he was locked *inside*, he admits that the situation was not as repressive as it otherwise might appear. While he waited for the police, two other flights came in and their passengers moved through the very same baggage area in a normal fashion. In addition, several airport personnel were working in the area.

**17.** *See* page 65 lines 3–5 of Mr. Salas's deposition. This assertion directly contradicts the allegation in the complaint that the boxes were first opened in a waiting room at the courthouse

"without any formal order." *See* Complaint in Civil No. 81–0881 at para. 57. Given that Salas's deposition was taken after the complaint was filed; that his testimony was given under oath; and that it constitutes an eyewitness account of what transpired—as well as an admission against interest—we will consider Salas's version of what occurred rather than that of his attorney who drafted and signed the complaint.

**18.** Other appliances with which plaintiffs apparently attempted to circumvent customs were: a deep fryer, a juicer, a portable and a regular television set, an electric iron, a cordless telephone, toys, etc.

**19.** *See* Exhibit V to defendants' motion for summary judgment (docket No. 79 in Civil No. 81–0881).

secure that this could not be taking place. I felt very comfortable.

Despite Salas's intimation that there was a "guise" of tax inspections afoot, it is uncontroverted that the Treasury agents' sole purpose in intervening with plaintiffs was to determine if the boxes had taxable items. It is also uncontroverted that plaintiffs did not declare these items nor keep receipts as required by law. Also, it is undisputed that no search occurred at the airport.

The state judge found that there was probable cause to bring criminal charges against Salas for obstruction of justice and disturbing the peace.[20] The boxes were placed in the custody of the Treasury Department which thereafter proceeded to make an inventory of the items and to present Salas with a demand for payment of taxes and fines. Salas refused to comply. Consequently, these items were never returned.

After the proceedings at the San Juan Judicial Center had concluded, in the early hours of the morning, Rivera, who had followed Salas to court, returned to the airport to retrieve the rest of plaintiffs' baggage. He obtained this baggage without further incident. What followed was the filing of the present complaints.

## ISSUES

We shall first address the soundness of the constitutional claims asserted by plaintiffs. Thereafter we shall discuss the jurisdictional prerequisites for the pendent state law actions and lastly, we shall deal with the adequacy of the claims grounded on the FAA regulations and tariffs.

**20.** He was released on his own recognizance. Later, apparently, the charges were summarily dismissed.

**21.** It also appears from the dense and often unintelligible language of the complaint that some of the plaintiffs may be asserting a Section 1983 claim based not on any direct injury to them but rather on a derivative claim by having observed the alleged violation of the civil rights of their traveling companions (discussed above). If in fact this is the case it need not detain us long. It is bedrock law that, barring exception-

## DISCUSSION

### A. THE FOURTH AMENDMENT CLAIMS

■ Plaintiffs' main allegation is that the defendants violated their Fourth Amendment right to be free from unreasonable searches and seizures. With this backdrop, the issue common to all defendants is whether or not the five or so boxes that were taken to the San Juan Judicial Center were unreasonably seized by certain of the defendants. Also, whether or not the search of these boxes pursuant to a Superior Court Judge's directive was illegal is a question relevant to this matter. In addition, there are two other issues which involve some plaintiffs individually. The concern specific to plaintiff Salas is whether or not his arrest by the police was unreasonable. Regarding plaintiffs Rivera and Ortiz, the specific issue is whether or not they were unreasonably "seized" in violation of the Fourth Amendment when certain police officers pushed them out of the baggage claim area. In the present case, plaintiffs assert that the inspection of their baggage and the way they were pushed by unspecified defendants constitute two separate violations of their civil rights which can be remedied under Section 1983.[21] We do not agree.

Finally, underlying all the above issues is the question of whether or not the state officials who are defendants in this case are entitled to qualified immunity.

#### 1. 42 U.S.C. Section 1983

Section 1983, the vehicle for these plaintiffs' claims, is the more than 100 year old federal statute commonly known as the Civil Rights Act.[22]

al circumstances not present here, individuals cannot vindicate the constitutional rights of third parties. *See Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); *Friedman v. Harold,* 638 F.2d 262, 265 (1st Cir. 1981). Consequently, we will dismiss those claims without further discussion.

**22.** The Civil Rights Act, April 20, 1871, C.22, § 1, 17 Stat. 13. Section 1983 (originally named the Ku Klux Klan Act of 1871) was enacted to instill federal control over state and territorial officials who were reluctant to prosecute persons

■ To establish a claim for relief under 42 U.S.C. § 1983, plaintiffs must allege and be able to prove that the defendants acted under color of state law to deprive them of a constitutional right and that the defendants' conduct was a cause, in fact, of plaintiffs' deprivation. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981), overruled in part on other grounds, *Daniel v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986); *Martinez v. California,* 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980) (in a Section 1983 case, the injury cannot be too remote a consequence of the state official's actions). *See also, Springer v. Seamen,* 821 F.2d 871 (1st Cir.1987).

### 2. The Constitutional Standard

■ Section 1983 is a uniquely federal remedy against state-based incursions upon federal rights. Section 1983 creates no substantive law. The statute is only a vehicle to vindicate personal injuries violative of the federal constitution and other federal laws. *See Baker v. McCollan,* 443 U.S. 137, 145, n. 3, 99 S.Ct. 2689, 2695, n. 3, 61 L.Ed.2d 433 (1979) ("Section 1983 ... is not itself a source of substantive rights, but [merely provides] a method for vindicating federal rights elsewhere conferred ...") The catalyst to a Section 1983 cause of action must be some form of state-tied tortious conduct involving individual federal rights. *Id.* at 140, 99 S.Ct. at 2692 (The "first inquiry" in any Section 1983 suit is "to isolate the precise constitutional violation with which [the defendant] is charged.") *See also, Martínez Vélez v. Simonet,* 919 F.2d 808 (1st Cir.1990). Here the proper constitutional characterization of plaintiffs' claims is one invoking the protection of the Fourth Amendment since it involves an investigating stop and arrest of a free citizen, and the seizure of property and persons. The test is one of objective reasonableness under the circumstances wherein the court must weigh the individual's legitimate expectation and right to privacy with the state's need to conduct the seizure and search. Subsumed to this standard is a threshold determination of what degree of privacy was at issue vis-á-vis the level of the government intrusion.

### 3. Lack of Section 1983 Claim

Plaintiffs have failed to present sufficient evidence to show that they will prevail at trial on these constitutional tort theories. Specifically, there is a glaring lack of any causal connection between the alleged seizure and search and the conduct of those defendants who are not police officers.

#### a. *Treasury Defendants*

■ Regarding the Treasury agents, plaintiffs make (too) much about how the *Torres* case "a posteriori" makes searches at the airport for taxable merchandise pursuant to the Excise Tax Act unconstitutional. First, *Torres* involved a criminal conviction for marihuana found in luggage at the airport. It implicated the highest form of Fourth Amendment concerns because the statute that was directly challenged in that case was enacted for the purpose of eliminating the need for probable cause for searches of luggage at the airport. (It must be remembered that Fourth Amendment cases are normally found in the criminal context and the typical remedy for violations is to apply the exclusionary rule of evidence.) In contrast, here there is no direct challenge to the statute (it is never mentioned in the complaints) there was no search at the airport; Salas's arrest was not pursuant to the Excise Tax Act; in any event the statute is administrative in nature and its implementation in this case, the record shows, was replete with evidence of probable cause. Second, unlike *Torres,* the state agents here do not have unbridled discretion to conduct warrantless searches. As applied, the statute is constitutional since the uncontroverted testimony of Martir, the Director of the Tax Division, shows that tax agents are trained and or-

who violated the rights of newly freed slaves and union sympathizers. Since these aggrieved blacks had no practical recourse in state courts against state officials, the Act sought to provide them with a neutral federal forum in which to air their complaints.

dered not to search suitcases or act on mere suspicion, etc. *See* note 14. In any event, we decline plaintiffs' indirect invitation to assess the constitutionality of the statute because the searches and seizure occurred pursuant to the statute.

Finally, and most important, the inspection provisions of the statute are not at issue here because the Treasury agents did not inspect, seize or search the baggage; rather, based on a valid and easily articulable reason that taxable merchandise was being smuggled the Treasury agents reported this obvious violation to the police and the mere *bona fide* reporting to the police of a *prima facie* violation of the law does not establish a tort cause of action, let alone one of constitutional dimensions. *See generally Raldiris v. Levitt & Sons of P.R., Inc.,* 103 D.P.R. 778 (1975).

▄ The remoteness between the damages alleged by plaintiffs and the conduct of defendants is most evident regarding the high officials of the Treasury Department who were not at the airport but who are accused of promoting regulations or ordering agents to "inspect personal luggage without a search warrant." Civ. No. 81–0881 at 3 para. 11. The agents themselves are said in the complaints to have violated the constitution because they had actual knowledge that it was a violation of the Federal Constitution "to open or inspect luggage of incoming travelers without a search warrant." Civ. No. 81–0881 at 4 para. 19. There is no evidence that this is true. More important, the overwhelming evidence is that the alleged searches or inspection of plaintiffs' baggage by Treasury agents, did not happen. Beyond the initial request to Salas that he declare what the boxes contained or allow their inspection, any other activity by the Treasury agents—as all the plaintiffs admit in their depositions—was upon order of the police officers, which, as we will explain below, resulted in being entirely legal.

b. *EAL and Security Associates*

▄ There has been absolutely no showing that either the EAL and/or Security

Associates' personnel were state actors subject to the constraints of Section 1983. The conduct of EAL's employees and the security entity and employees, consisting of such things as taking down the ticket stub numbers of the baggage seized by the police or assisting the police in its investigation, cannot rise, by any concept, to the level of a constitutional violation. Allegations in the complaint that EAL employees, for example, acted independently to "lock" Salas up and "convert" his baggage are contradicted by other allegations in the complaints, *cf., e.g.* police advised EAL "not to let [Salas] out of luggage room".[23] Moreover, the complaints charge these individuals, i.e., EAL and Securities Associates and their employees, with knowledge that their employment gave them "no power … to arrest, imprison, search person or property…." Whatever the correctness of this allegation, it is irrelevant since none of these individuals or entities arrested, searched or seized plaintiffs or their property. Importantly, the accounts of plaintiffs themselves indicate that the police was in command at all times and it was a policeman who guarded the entry and exit from the baggage claim area. It was also the police who allegedly pushed Rivera and Ortiz; and it was the police who seized their baggage and later searched it once they were before a magistrate; and, finally, it was the police who arrested Salas. The conduct of the other defendants was, if anything, peripheral to all the above acts, and in the case of the higher officials sued—there is simply no connection whatsoever.

c. *Police Defendants*

Regarding the police officers themselves, we find, as we will explain below, that they acted reasonably under the circumstances in arresting Salas and seizing the five boxes. To the extent they acted negligently, negligence alone is not sufficient to raise a 1983 claim. Moreover, the search was conducted under the auspices of a Superior Court Judge who made an entirely rational

---

**23.** *Complaint* in Civ. No. 81–0881 at 8 para. 47.

finding of probable cause to which we can ascribe no legal error.

#### d. *Conclusion*

In summary, plaintiffs have failed to raise an adequate Section 1983 claim since they have been unable to prove, when put to the task by defendants' motions for summary judgment, that the great majority of the defendants, i.e., the EAL and Security Associates employees were acting under color of state law; that those Treasury agents that were acting under state law behaved in a manner that actually caused plaintiffs' alleged deprivation of civil rights; and finally, that the police—those directly tied to the incident—did not act reasonably and with probable cause and are not entitled to qualified immunity.

#### 4. Qualified Immunity

Before continuing with our assessment of the reasonableness of defendants' conduct (particularly the police), we take a moment to discuss the doctrine of qualified immunity because it too is premised on a standard of reasonableness.

■ State actors are entitled to qualified immunity from damages under Section 1983 if their challenged behavior did not violate clearly established statutory or constitutional rights "of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Boyle v. Burke*, 925 F.2d 497 (1st Cir.1991); *Unwin v. Campbell*, 863 F.2d 124, 128 (1st Cir. 1988). The standard is an objective rather than a subjective (i.e. state of mind of the official) one and the reasonableness of the defendant's actions must be viewed under the light of the particular circumstances framed by the complaint and subsequent record. *See Collins v. Marina–Martínez*, 894 F.2d 474 (1st Cir.1990); *Unwin*, 863 F.2d 124. Although the standard is an objective one, it does not embody an unduly harsh or disruptive inquiry. *See Brennan*

*v. Hendrigan*, 888 F.2d 189, 192 (1st Cir. 1989) ("[s]tate actors must keep their behavior within the realm of reason; but, perfection is neither expected nor required. In the lexicon of qualified immunity, there is room for mistaken judgments").

■ Plaintiffs, in their objection to the defense of qualified immunity, baldly insist that the state actors exhibited bad faith in their conduct towards them. But contentions of bad faith *per se* will not suffice. "When, as here, the defense of qualified immunity is raised, a plaintiff cannot sidestep it for summary judgment purposes merely by alleging that defendants uncaringly transgressed his rights." *Brennan*, 888 F.2d at 192 (citing *Anderson v. Creighton*, 483 U.S. 635, 640–41, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987) and quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) ("[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner.")

#### 5. Reasonableness of Defendants' Actions

As discussed above, the essence of the qualified immunity standard is the question of whether a reasonably competent official would likely have believed his actions vis-á-vis plaintiffs to be in accordance with the Constitution. Given our previous observations, we need apply this test only to the Treasury agents and police officers present at the scene.[24] The Fourth Amendment commands Government officials to perform only those searches and seizures of persons or property which are reasonable, and preferably with a warrant. This usually means that state actors, police officers especially, must have probable cause to act (there are, however, approximately 20 exceptions to the probable cause (warrant) requirement.) *See generally* Kinsport, 23 Ga.L.Rev. 597 (1989) "qualified immunity in Section 1983 Cases: The Unanswered questions."

---

**24.** As we stated, the actions of the higher officials in the Treasury Department, i.e. defendants César Pérez and Martir Santiago, are too remote to be considered relevant to this case. *See Newman v. Comm. of Mass.*, 884 F.2d 19, 26 (1st Cir.1989) *cert. denied* 493 U.S. 1078, 110

S.Ct. 1132, 107 L.Ed.2d 1037 (1990) ("Defendants are liable for damages only if they *should have known* that *what they did* violated the law.") (emphasis ours); *see also, Unwin*, 863 F.2d at 133–37.

■ "In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act." *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949) *reh'g denied* 338 U.S. 839, 70 S.Ct. 31, 94 L.Ed. 513 (1949). The Fourth Amendment, therefore, does not protect people from *every* governmental intrusion into their legitimate expectations of privacy, only from unreasonable ones. *United States v. Whitehead*, 849 F.2d 849 (4th Cir.1988), *cert. denied* 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 566 (1988).

■ In assessing reasonableness, "judges must weigh the need to search or seize against the invasion the search or seizure entails." *López López v. Aran*, 844 F.2d 898, 905 (1st Cir.1988) on remand, 699 F.Supp. 365 (D.P.R.1988), *affirmed*, 894 F.2d 16 (1st Cir.1990); *see also, New Jersey v. T.L.O.*, 469 U.S. 325, 337, 105 S.Ct. 733, 740, 83 L.Ed.2d 720 (1985) (plurality opinion).

The components of this balancing test are "[1] the gravity of the public concerns served by the seizure, [2] the degree to which the seizure advances the public interest, and [3] the severity of the interference with individual liberty." *Brown v. Texas*, 443 U.S. 47, 51, 99 S.Ct. 2637, 26, 61 L.Ed.2d 357 (1979).

### a. *Seizure of the Boxes*

■ The reasonableness test itself is fact specific and heavily dependent on the particular circumstances. *United States v. La France*, 879 F.2d 1, 6 (1st Cir.1989) ("[the court] must ask whether the detention, taken as a whole, or any step therein, was unreasonable. In so doing, [the court] must be careful of the citizen's rights, and equally careful that [the court] does not hold law enforcement to a standard akin to perfection.") In the present case, a very important circumstance is the airport setting. Undoubtedly, individuals have a legitimate expectation of privacy in their suitcases, which generally contain highly personal belongings, but that expectation of privacy is more attenuated where, as here, the suitcases were not the focus of the seizure (and later search) but rather certain boxes which contained taxable merchandise. Also, plaintiff Salas who knew about the Excise Tax Act, could reasonably have expected to be asked questions or to be subject to an inspection regarding the contents of the many brand-new, disguised boxes he had under his control. In addition, when the purpose of the investigating stop, seizure or search is not criminal enforcement but rather deals more with administrative matters such as ensuring the payment of taxes then the level of suspicion needed before the government can intrude into an individual's privacy is commensurately lower.

Here the public concerns served by the seizure run high because they involve the flow of taxable merchandise through an airport, i.e., the prevention of smuggling; ensuring that individuals pay their legal duty when they import goods to Puerto Rico; and ensuring that individuals obey the standard of the law (securing the public peace and the cause of justice).

We find that the seizure involved here advanced the public interest of securing the payment of taxes on taxable merchandise. It seems reasonable, and uniquely practical, to require citizens to declare their taxable merchandise upon entering Puerto Rico and to substantiate that declaration with receipts. Failure to do this prompts an investigation which consists of asking questions to those incoming travelers who reasonably seem to have taxable items; and, if necessary, to carry out a limited inspection. Suitcases are never searched and declarations or answers are rarely disregarded. The focus is on the obvious; clearly visible new goods; brand new boxes emblazoned with the brand name of electronic equipment or boxes, as here, which are so numerous for a small party; purposely disguised to avoid a hint of their contents.[25] His statement that he did this

---

**25.** Plaintiff Salas admits to having spent the night prior to the flight, transferring the TV sets,

out of fear that they might get stolen, just as with his statement that he never keeps purchase receipts regardless of insurance and warranty concerns is too patently self-serving.[26]

When a traveler, under these circumstances, refuses to answer questions; does not produce receipts or make the proper declarations; and does not consent to an inspection—what should be done? If, as here, there is a sufficiently particularized suspicion that the holder/possessor is smuggling merchandise, is it not reasonable to seize the boxes lest they be taken away with no possibility of ascertaining their contents thereafter and consequently depriving the government of necessary taxes? *See generally, United States v. Stornini*, 443 F.2d 833, 835 (1st Cir.1971), *cert. denied* 404 U.S. 861, 92 S.Ct. 162, 30 L.Ed.2d 104 (1971).

Balancing these concerns with the negligible intrusion on plaintiffs' property,[27] and the lessened expectation of privacy that individuals such as plaintiffs should have in this context, we find that the conduct of defendants and the seizure of the boxes was reasonable and did not violate the Fourth Amendment. Consequently, defendants are entitled to qualified immunity on these claims.

### b. *Salas's Arrest*

Salas's arrest, though related to his refusal to have the boxes inspected or to describe their contents, was not made pursuant to the tax law (or by tax agents for that matter) but pursuant to the Puerto Rico Criminal Code. It was mainly for what the police perceived to be Salas's confrontational and defensive style and his refusal to aid in their investigation of the events. Conceivably, the police may have also felt they were witnessing Salas's violation of the Excise Tax Act.

Salas has not presented any evidence to show that his arrest on the above grounds was unreasonable. Our reading of the record supports a finding that the police had probable cause that Salas was violating the law and thus that they could arrest him. Although it seems that an arrest warrant was largely superfluous, or exceedingly formal, it does also indicate the police's initial intervention with Salas insofar as a Superior Court judge found probable cause not only to issue a warrant for Salas's arrest but also for the scheduling of further proceedings against him. That the charges were later dismissed is of no consequence since even the subsequent acquittal of defendant never comprises evidence of a lack of probable cause. *See generally Rodríguez v. Clark Color Lab.*, 732 F.Supp. 279, 284 (D.P.R.) (acquittal by jury doesn't thwart reasonableness of defendant's conduct), *affirmed*, 921 F.2d 347 (1st Cir.1990); *Vince v. Posadas de P.R., S.A.*, 683 F.Supp. 312, 316 (D.P.R.1988) (fact that evidence insufficient to convict plaintiff does not undermine reasonableness of defendants' conduct). H.M. Brau Del Toro, *Daños y Perjuicios Extracontractuales en Puerto Rico*, 2d ed. (1986) at 111. At most, some of the conduct of the police, like having Salas wait two hours for them to return with the warrant rather than processing him immediately[28] was simple negligence and negligence alone is not sufficient to create a civil rights action. *Bren-*

---

for example, from their factory-box to plain boxes he acquired, or cutting out any references the boxes had on them.

**26.** *See* Deposition of November 8, 1983 lines 1–19 at p. 29 and lines 5–19 at 35.

**27.** Particularly regarding the Treasury agents who simply asked questions, requested to inspect, and reported a potential violation of the law to the police. In fact, Gregorio Lebrón and the others did nothing.

**28.** Although Salas makes some allusions to how this constituted false imprisonment, he admits that the cause of action, if any, is not of consti-

tutional dimension but rather a run-of-the-mill tort action. *See* Plaintiffs' Objection to the Magistrate's Report and Recommendation, docket No. 47 at 4, Civil No. 81–0943. Even if it were of a constitutional nature, in *United States v. Place*, 462 U.S. 696, 710 n. 10, 103 S.Ct. 2637, 2646 n. 10, 77 L.Ed.2d 110 (1983), the United States Supreme Court, while discussing *Terry* stop's time limits, stated that rigid time limitations "would undermine the equally important need to allow authorities to graduate their responses to the demands of any particular situation."

*nan v. Hendrigan,* 888 F.2d 189, 194 n. 3 (1st Cir.1989).

We need not second guess the police nor the Superior Court judge since plaintiff Salas has not squarely addressed the issue about the exact basis for his arrest. Rather, he has attempted to implicate the rest of the defendants as having actually arrested him pursuant to what he perceives as an unconstitutional statute [29] because it appears to be a akin to the statute considered in *Torres.* This is, however, irrelevant since there was no arrest or search made pursuant to that provision. In his eagerness to lump all the defendants together and to portray the tax law as the culprit, Salas has failed to adequately address the issue of the criminal grounds for his arrest, let alone satisfy his burden of proving a Section 1983 violation. Thus we need not go further. Qualified immunity applies equally to this claim.

c. *The Push Against Rivera and Ortiz*

 This claim will not detain us long. The assault or "seizure" within the Fourth Amendment framework allegedly occurred when Rivera and Ortiz refused to leave the baggage claim area. In her deposition, Ortiz said one police officer pushed her away from the boxes when she tried to remove them, and then told her to leave the area, which she did. Rivera, on the other hand, testified that more than one police officer pushed him out of the area because, he remembers, they knew he was armed with a hand gun and didn't want any problems and they also wanted him out of the area. Given the factual context detailed above, this type of physical contact hardly seems to merit constitutional characterization.

There was no excessive force involved and the conduct by the police officers was entirely reasonable. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir.1973), *cert. denied* 414 U.S. 1033, 94

S.Ct. 462, 38 L.Ed.2d 324 (1973); *see also Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) (the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight). Accordingly, this claim will also be dismissed.

6. Conclusion

Despite the heavy broadsides thundering loudly with constitutional self-righteousness leveled by plaintiffs, when the smoke clears we are left with a clear vision of the emptiness of their claims. This case is nothing more than that of a group of individuals, and one man in particular—Salas, who knowingly and painstakingly attempted to circumvent the tax law and were caught. A confrontation ensued, and Salas was arrested and five of eleven boxes full of taxable goods were seized.

Salas acted under the false hope—actually a carefully conceived plan—that the *Torres* decision had casted such a sobering shadow on all government interdictions at the airport that he could sneak-by with loads of goods without paying a penny in taxes. The plan failed. Things became heated, not the least because of plaintiffs' own intransigent conduct no doubt bolstered by his misapplication of *Torres.* However, no civil rights were violated.

Most of the defendants sued had nothing whatsoever to do with the incident. Furthermore, those that were involved did not violate the Fourth Amendment and they acted with sufficient reasonableness at all times to be cloaked with immunity against damages.[30]

B. STATE CLAIMS

 The state law claims are based on the Puerto Rico libel and slander provisions, 32 L.P.R.A. §§ 3141–3149, as well as actions sounding in tort i.e., false imprisonment (Salas only), assault (Ortiz and Rivera only) and conversion based on 31 L.P.R.A. § 5141. Since we find that plaintiffs have

---

**29.** Section 4077(g) of the Excise Tax Act.

**30.** At best, only three of the numerous defendants identified in the complaints intervened in

any pertinent manner with plaintiffs. These are, Treasury agent Félix Gregorio Lebrón and police officers Efrain Vega and Rubén Rivera.

failed to establish any viable federal claims we will not entertain any of the pendent claims brought under Puerto Rico law since there is no longer anything to append these claims to for purposes of our limited jurisdiction, and out of concerns for comity. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139–40, 16 L.Ed.2d 218 (1966) (federal courts dismissal of complaint for want of a substantial claim before trial requires that pendent claims be dismissed); *Guerrero v. Katzen,* 571 F.Supp. 714, 722 (D.D.C.1983). In addition, plaintiffs' claims under state law, in particular, false imprisonment; assault; conversion; and slander, are typical of the type of general tort law claims that are not proper 42 U.S.C. § 1983 actions. *See Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976) *reh'g denied* 425 U.S. 985, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976); *Parratt v. Taylor,* 451 U.S. 527, 544, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (the Fourteenth Amendment cannot be made a "font of tort law to be superimposed upon whatever systems may already be administered by the States"). Since our dismissal of the federal claims leaves us with no independent federal jurisdiction, we will dismiss the pendent claims as well but without prejudice. We have carefully considered the factors enunciated in *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), for exercising the power of pendent jurisdiction and have decided not to use those discretionary powers in this case. *Newman v. Burgin,* 930 F.2d 955 (1st Cir.1991) (broad discretionary authority to exercise pending jurisdiction over state law claims.) We wish to avoid needless decisions here on matters of state law, particularly regarding tenuous claims. Nor do we find any exceptions to the *Gibbs* rule to be applicable to the case at bar. *See O'Brien v. Continental Illinois Nat. Bank & Trust Co. of Chicago,* 593 F.2d 54, 65 (7th Cir.1979) *Compare with* 31 L.P.R.A. § 5303 and *Moa v. Common-*

*wealth,* 100 D.P.R. 623 (1982); *Fresh O'Baking Co. v. Molinos de Puerto Rico,* 103 D.P.R. 509 (1975); *Pueblo Int'l v. De Cardona,* 725 F.2d 823, 826 (1st Cir.1984). *See also, Ramos Ayala v. Diaz Martinez,* 707 F.Supp. 75 (D.P.R.1988) (Gierbolini, J.) (discussing cases).

### C. CLAIMS PURSUANT TO FAA REGULATIONS AND FEDERAL TARIFFS

Plaintiffs further aver violation of unspecified FAA regulations and federal tariffs for failure to return certain pieces of baggage. We need go no further to dismiss the FAA regulations and tariffs claims. Plaintiffs have never identified what tariffs or regulations they contend were violated despite several opportunities to clarify this issue. They have not quoted any pertinent statutory or contractual language nor have any cases been cited on this particular matter. In short, nothing whatsoever has been forthcoming on this issue.

In any case, to the extent that they allege that EAL or its employees violated any law by not personally handling plaintiffs baggage, that allegation is thoroughly belied by the record. EAL produced the luggage by placing it on the conveyor belt from where plaintiff Salas himself removed it. Subsequently, the police seized some of the baggage, the rest being eventually delivered to plaintiffs, and at that point any control EAL may have had over the luggage ceased; and so did its potential liability under any conceivable tariff.

### CONCLUSION

Taking the record, particularly the deposition transcripts, in the light most favorable to plaintiffs we fail to see how they can meet their burden of proof on the claims asserted. Therefore, the motions for summary judgment filed by defendants [31] are hereby GRANTED.

**31.** Motion to Dismiss and/or for Summary Judgment (Civ. 81–0881, docket No. 73, filed on April 13, 1984) and Motion for Summary Judgment (Civ. 81–0881, docket No. 79, filed on September 12, 1984).

Accordingly, the complaints in these consolidated actions[32] are hereby DISMISSED.

Judgment shall be entered accordingly.

IT IS SO ORDERED.

32. Second Amended Complaint (Civ. 81–0881, docket No. 67, filed on December 12, 1983)

Amended Complaint (Civ. 81–0881, docket No. 21, filed on September 17, 1981).